IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:15-CR-00018-BR

| UNITED STATES OF AMERICA | ) |  |
|---|---|---|
|  | ) |  |
| v. | ) | ORDER |
|  | ) |  |
| LORNE HOWARD | ) |  |
|  | ) |  |

This matter is before the court on defendant's motion for compassionate release. (DE # 92.)

In 2015, defendant, along with a co-defendant, was charged with (1) possession of equipment with intent to manufacture methamphetamine and aiding and abetting the same and (2) possession with intent to distribute methamphetamine and aiding and abetting the same. In 2016, pursuant to a plea agreement, defendant pled guilty to the distribution charge. The court sentenced defendant to 70 months imprisonment and three years supervised release. Also, the court ordered defendant to pay a special assessment and $6,000 restitution. The other charge was dismissed. Defendant has been incarcerated approximately three years. He is currently incarcerated at FCI Edgefield and is scheduled for release in September 2021.

On 8 October 2019, defendant filed the instant motion and seeks compassionate release based on "serious medical conditions." (Id. at 1-2.) Specifically, defendant requests that his sentence of imprisonment be reduced to time served and that he be released to live at his sister's home to begin his term of supervised release.[1] (Id. at 6; Supp. Reply, DE # 104, at 1.) The

---

[1] At the evidentiary hearing, defendant testified that upon release, he planned to live at his mother's home, where his sister would "check in" and a caregiver would be there at night.

government opposes defendant's motion.  (Resp., DE # 94.)  The court held an evidentiary hearing on the motion on 11 December 2019.  At the hearing, defendant testified via videoconference technology from FCI Edgefield.

Defendant is 51 years old, is nearly six feet tall, and weighs 350 pounds.  While incarcerated, defendant's weight has fluctuated; at one point, he weighed 240 pounds.  In the past year, he has been hospitalized locally four times, for a total of 11 weeks.

In 2006, defendant was diagnosed with diabetes.  His blood is drawn weekly to check the glucose level.  Defendant is treated with approximately 100 units of insulin per day.  He has neuropathy, swelling, and ulcers in his legs.  Fluid drains from his legs constantly, which require bandages.  Defendant is in constant pain.

Defendant has also been diagnosed with chronic obstructive pulmonary disease.  He experiences shortness of breath when walking more than 30 feet and is required to stop and rest.  Defendant does not use a cane or walker.

Defendant has undergone vein closure surgery in his right leg, and he needs additional surgeries.  He has Stage 3 kidney disease, a history of pneumonia, high blood pressure, constant swelling of his stomach, and a diaphragmatic hernia.  He needs surgery for the hernia, but that surgery cannot be done until he has additional surgeries on his legs.  Doctors have told defendant there is a 50% mortality rate if his hernia is not surgically corrected.

Defendant cannot sleep lying down and frequently wakes during the night due to coughing.  He requires assistance putting on and tying his shoes as well as bandaging his legs.  He can shower, use the toilet, eat, take medication, and walk unassisted.  However, while incarcerated, he has fallen as he was getting off the toilet and from his bed in the middle of the

night.

Defendant is concerned that he will not survive until his anticipated release date. Through counsel, he submitted a request for compassionate release to the Bureau of Prisons ("BOP").

At the hearing, the government submitted two exhibits. Exhibit 1 consists of copies of four documents. The first document is a 28 August 2019 letter from defendant's counsel to the Warden of FCI Edgefield, the body of which reads:

> I don't know if Lorne Howard, one of your guests now at the Edgefield County Hospital, has made a request for compassionate release or not. In case he has not done so, please accept this letter as a formal request for consideration of compassionate release under the First Step Act, made for Lorne Howard by me as his counsel.
> Many thanks.

The second document is defendant's Inmate Profile,[2] which appears to have been enclosed with counsel's letter. That document, created by the BOP, contains information about defendant, including his name, date of birth, projected release date, offense of conviction, security classification, medical hold, and release to a local hospital. The third document is the front of the post-marked envelope which appears to have contained that letter and enclosure. The fourth and final document is the Acting Warden's 1 October 2019 letter responding to counsel's letter and stating in relevant part, "Unfortunately, your letter did not provide a detailed description for the purpose of Compassionate Release for Howard. If you provide a reasoning for the request, it then can be forwarded to the Case Management Coordinator for review according to Program Statement 5050.50 Compassionate Release/Reduction in Sentence."

---

[2] "An 'inmate profile' is the capsulized version of the inmate's central file, which contains all pertinent historical information about the inmate." Castaneda v. Henman, 914 F.2d 981, 982 n.2 (7th Cir. 1990).

Exhibit 2 is the declaration of a BOP Senior Attorney certifying and authenticating the attached records as business records and as a portion of defendant's official BOP medical records. Those medical records largely confirm defendant's medical history testimony. They also evidence that defendant has been, and is currently, treated with numerous prescription medications, has dental issues, is obese, and has been advised by a cardiologist to go on a diet.

After the hearing, on 17 December 2019, defendant filed a fifth supplemental reply. It represents that defendant "was advised today that he will be returning to the outside [local] hospital . . . due to an excessive buildup of fluid in his abdomen and extremities." (DE # 104, at 1.)

The First Step Act of 2018 amended, among other things, 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to move for a sentence reduction. The statute provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>   (1) in any case—
>     (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>       (i) extraordinary and compelling reasons warrant such a reduction; or
>       (ii) the defendant is at least 70 years of age, has served at least 30 years in prison . . .;
>     and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c).

The parties agree that defendant seeks relief based on "extraordinary and compelling

4

reasons" under § 3582(c)(1)(A)(i).  (See Resp., DE # 94, at 3; Reply, DE # 96, at 1 & n.1.) They also agree that BOP Program Statement 5050.50, "Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)," ("BOP PS 5050.50") and United States Sentencing Guideline § 1B1.13, "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)," and its commentary guide the court's consideration of the instant motion.  (See Mot., DE # 92, at 4; Resp., DE # 94, at 3-4, 5, 6.)

Before considering the merits of the motion, the court must determine whether defendant has fully exhausted his administrative appeal rights or if there has been a lapse of 30 days since the Warden received defendant's request.  See § 3582(c)(1)(A).  At the hearing, the government argued defendant had not satisfied the exhaustion requirement because his request to the Warden failed to state the specific grounds justifying compassionate release.  To initiate a request that the BOP, on a defendant's behalf, bring a motion for compassionate relief based on extraordinary or compelling circumstances, the defendant (or someone on his behalf) must submit a written request to the Warden.  BOP PS 5050.50, at 3 (eff. Jan. 17, 2019); see also 28 C.F.R. § 571.61.

> The inmate's request shall at a minimum contain the following information:
>
> (1) The extraordinary or compelling circumstances that the inmate believes warrant consideration.
> (2) Proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment.

BOP PS 5050.50, at 3 (quoting 28 C.F.R. § 571.61(a)).

The 28 August 2019 letter from defendant's counsel to the Warden does not contain *any*

5

information about the basis for defendant's request or about defendant's proposed release plan. Further, such information is not evident from defendant's Inmate Profile enclosed with the letter. At the hearing, defendant did not submit any evidence or argument that he responded to the Warden's letter requesting reasoning for defendant's request. Instead, defense counsel argued the August letter satisfies the exhaustion requirement because he used a "form" letter deemed satisfactory in other cases. Defense counsel gave no explanation for why he did not submit additional information to the Warden as requested. He filed the instant motion within one week of the Warden's letter.

In short, defendant did not provide enough information for the BOP to evaluate and make a decision on his request. As such, the court concludes defendant has not fully exhausted his administrative appeal rights or triggered the 30-day lapse period. Even assuming defendant has satisfied the exhaustion/lapse period requirement of § 3582(c)(1)(A), his motion fails on the merits.

A "debilitated medical condition" is a medical circumstance which may warrant a reduction in sentence. See BP PS 5050.50, at 5. The BOP considers inmates having such a condition as those "who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover." Id. The BOP considers significant whether

> the inmate is:
> - Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or
> - Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours.

Id.

Similarly, the relevant sentencing guideline policy statement and its commentary suggest that a defendant's medical condition can qualify as an extraordinary and compelling reason to warrant a sentence reduction under § 3582(c)(1)(A)(i). A sentence reduction is appropriate where

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is—
>     (I) suffering from a serious physical or medical condition,
>     (II) suffering from a serious functional or cognitive impairment, or
>     (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B.13, cmt. n.1(A).

At the hearing, defense counsel acknowledged defendant is not terminally ill. Rather, he argued defendant's health has worsened since incarceration, and defendant is now in a debilitated medical condition. Based on defendant's testimony and the medical records submitted, defendant clearly has some significant medical conditions for which the BOP has treated him both inside and outside of the prison setting. However, under the circumstances here, those medical conditions alone are not enough. The effect those conditions have had on defendant's ability to care for himself is minimal. Defendant takes care of the major tasks of daily living unassisted. He is not confined to a bed or chair for any portion of waking hours. Therefore, the court concludes his medical conditions do not constitute extraordinary and compelling reasons to warrant a reduction in his term of imprisonment.

Defendant's motion is DENIED.

This 20 December 2019.

_____
W. Earl Britt
Senior U.S. District Judge