IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:15-CR-00018-BR

| UNITED STATES OF AMERICA | ) |  |
|---|---|---|
|  | ) |  |
| v. | ) | ORDER |
|  | ) |  |
| LORNE HOWARD | ) |  |

This matter is before the court on defendant's third motion for compassionate release, (DE # 120), which he supplemented, (DE # 121). The government filed a response in opposition, (DE # 112), to which defendant filed a reply, (DE # 126), and a supplemental reply (DE # 127).

## I. BACKGROUND

In 2016, defendant pled guilty to possession with intent to distribute methamphetamine ("meth") and aiding and abetting the same. The court sentenced defendant to 70 months imprisonment, representing a 35% reduction below the bottom of the sentencing guidelines range, and three years supervised release and ordered him to pay a special assessment and $6,000 restitution. He is currently incarcerated at FCI Butner Low and is scheduled for release in August 2021.

In October 2019, defendant filed his first motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018 ("First Step Act"),[1] based on his serious medical conditions. In December 2019, the court held a hearing on the motion, at

---

[1] The First Step Act amended § 3582(c)(1)(A) to permit a defendant to bring a motion for compassionate release. See Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).

which defendant testified via videoconference technology. The court denied the motion because defendant had not satisfied the exhaustion/lapse period requirement of § 3582(c)(1)(A) and, alternatively, because his medical conditions, while significant, did not constitute extraordinary and compelling reasons to warrant a reduction in his term of imprisonment. (DE # 105.)

A week later, defendant requested that the court reconsider its ruling based on a recent hospital stay and the Bureau of Prison's ("BOP") failure to transfer him to a tertiary care hospital. The court declined to disturb its earlier ruling and noted that defendant still had not shown he satisfied § 3582(c)(1)(A)'s exhaustion/lapse period requirement. (DE # 111.)

One month later, defendant filed his second motion for compassionate release, again pursuant to § 3582(c)(1)(A) and based on his serious medical conditions. Although defendant submitted evidence to show he had satisfied the exhaustion/lapse period requirement, he did not rely on any new medical evidence or information. The court denied defendant relief. (DE # 119.)

One month later, defendant filed the instant motion.

## II. DISCUSSION

Defendant again seeks compassionate release pursuant to § 3582(c)(1)(A).[2] That statute provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>   (1) in any case—
>     (A) the court, upon motion of the Director of the Bureau of

---

[2] Defendant seeks relief under the "CARES Act of March 27, 2020." (DE # 120, at 1, 3; DE # 126, at 1.) The Coronavirus Aid, Relief and Economic Security Act (known as the "CARES Act"), enacted 27 March 2020, "authorizes the BOP—not courts—to expand the use of home confinement" under 18 U.S.C. § 3624(c)(2). United States v. Nash, No. 19-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases); see also United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding the CARES ACT "does not authorize the court to order defendant's placement in home confinement"). As such, the court construes the motion under § 3582(c)(1)(A). See Nash, 2020 WL 1974305, at *2.

> Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > (i) extraordinary and compelling reasons warrant such a reduction . . .
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c).

The relevant policy statement is United States Sentencing Guideline § 1B1.13, "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)."[3] It "requires: (1) extraordinary or compelling reasons to warrant a reduction in a defendant's sentence, (2) that the defendant is not a danger to the safety of others or the community, and (3) that release from custody complies with § 3553(a) factors." United States v. Lake, No. CR 5:16-076-DCR, 2019 WL 4143293, at *2 (E.D. Ky. Aug. 30, 2019) (citing U.S.S.G. § 1B1.13 (2018)).

Under the policy statement, extraordinary and compelling reasons justifying a sentence reduction exist based on any of following circumstances:

> (A) <u>Medical Condition of the Defendant</u>.—
> > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic

---

[3] Technically, the policy statement, which was adopted prior to the First Step Act, applies only to motions for compassionate release filed by the BOP. See United States v. Beck, No. 1:13-CR-186-6, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019). "The Sentencing Commission has not amended or updated the old policy statement since the First Step Act was enacted, nor has it adopted a new policy statement applicable to motions filed by defendants. While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." Id. at *6-7 (citation and footnote omitted).

    lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
  (ii)  The defendant is—
    (I)  suffering from a serious physical or medical condition,
    (II)  suffering from a serious functional or cognitive impairment, or
    (III)  experiencing deteriorating physical or mental health because of the aging process,
    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
(B)  <u>Age of the Defendant</u>.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
(C)  <u>Family Circumstances</u>.
  (i)  The death or incapacitation of the caregiver of the defendant's minor child or minor children.
  (ii)  The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
(D)  <u>Other Reasons</u>.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B.13, cmt. n.1.

  As an initial matter, the court notes that the government does not dispute that defendant has met the exhaustion/lapse requirement. In support of the merits of his motion, defendant argues that he is seriously ill and that his serious medical conditions make him particularly vulnerable to COVID-19, justifying his release. (See DE # 120, at 1-3; DE # 121, at 1; DE # 126, at 2.) Although defendant initially requested that his imprisonment term be reduced to time served so he could begin his supervised release term, (see DE # 120, at 3), he is amenable to serving the remainder of his imprisonment term on home confinement[4] (after a 14-day quarantine in the BOP), (DE # 126, at 2), before beginning his supervised release term. The

---

[4] As recognized previously, the court does not have the authority to order that defendant serve the remainder of his term of imprisonment on home confinement. See supra note 2.

government contends defendant's medical conditions are not extraordinary or compelling reasons to justify his release because none of his conditions are terminal or serious enough to affect his ability to care for himself. (DE # 122, at 13-15.) It also claims the BOP is addressing the spread of COVID-19 within its prisons, including, in appropriate cases, releasing vulnerable inmates to home confinement, and therefore, the BOP is adequately protecting defendant from contracting the virus. (See id. at 7-8, 17-19.) Finally, the government requests the court deny relief upon consideration of the § 3353(a) factors, citing defendant's involvement in a drug trafficking operation and his prior state drug trafficking conviction. (Id. at 21.)

To determine whether defendant has shown extraordinary and compelling reasons to justify a sentence reduction, the court begins by considering defendant's health conditions. As established by defendant's testimony at the December 2019 hearing and his BOP medical records submitted at that hearing and filed on the record, defendant is 52 years old and has numerous physical and medical conditions, the most serious of which are chronic obstructive pulmonary disease ("COPD"), Type II diabetes, obesity, Stage 3 kidney disease, edema, open wounds on his les, and a diaphragmatic hernia. Defendant is in constant pain and needs additional surgeries on his legs before he can have surgery to correct the hernia. He has been hospitalized five times since 2018, for a total of 12 weeks.

As the government correctly points out, and as this court has recognized in prior orders, defendant is not terminally ill. (See DE ## 105, 111.) Also, as the court has previously found, despite his numerous health issues, defendant can engage in most of his daily activities without assistance. (See DE # 105.) Now, however, there is an added variable—the COVID-19 pandemic. Having COPD, obesity, and diabetes cause defendant to be at a higher risk of severe

5

illness from COVID-19.  See Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 5, 2020).  While the BOP has undertaken efforts to prevent the virus's spread throughout its prison population, the number of positive inmates at FCI Butner Low, where defendant is housed, has steadily increased, and the numbers at the greater Butner complex are among the highest in the nation.  See Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (follow "COVID-19 Cases" hyperlink for "full breakdown and additional details") (last visited May 5, 2020).  The court concludes that these circumstances constitute extraordinary and compelling reasons warranting a sentence reduction.

Turning to an assessment of defendant's dangerousness and the applicable § 3353(a) factors, defendant's involvement in the instant drug trafficking offense was as a "smurf," providing pseudoephedrine and other supplies needed to manufacture meth to his co-defendant in return for meth, and he did not use or possess firearms.  (See DE # 68, at 4-6.)  He has been incarcerated nearly four years, and with good time credit, he has served almost 75% of his sentence.  He has completed the Residential Drug Abuse Program, and his security classification is minimum.  (12/11/19 Hrg, Gov't Ex. 1.)  Although defendant committed the instant offense 12 years after having been convicted in state court of a drug trafficking offense, (DE # 68, at 8), given the amount of time he has been incarcerated, his poor health, and his conditions of supervised release (as modified below), it is unlikely he will reoffend.  Upon release, defendant plans to reside with family members who will provide him with financial support, apply for social security benefits, and receive medical treatment through Duke University Medical Center and other providers.  (DE # 112-1.)

6

Considering all the circumstances, the court concludes that defendant is not a danger to the safety of others or the community and that reducing his sentence of imprisonment to time served reflects the seriousness of his offense, promotes respect for the law, and provides just punishment. The court does, however, find it appropriate to modify defendant's conditions of supervised release to require him to remain on home detention for part of the three-year term.

### III. CONCLUSION

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), defendant's motion for compassionate release is GRANTED. Defendant's sentence of imprisonment as reflected in the judgment dated 8 February 2016 is REDUCED to time served. Defendant's special conditions of supervision as reflected in the 8 February 2016 judgment are MODIFIED by the addition of the following:

> The defendant shall abide by all conditions and terms of the home detention program for a period of 180 consecutive days. The defendant shall be restricted to his residence at all times except for pre-approved and scheduled absences for employment, education, religious activities, treatment, attorney visits, court appearances, court obligations or other activities as approved by the probation officer. The defendant shall submit to Radio Frequency monitoring and abide by all program requirements, instructions and procedures provided by the supervising probation officer. The defendant shall pay for location monitoring services as directed by probation officer. The United States Probation Office shall install the monitoring equipment within 48 hours of the defendant's release from imprisonment.

All other provisions of the 8 February 2016 judgment shall remain in effect. The BOP may delay defendant's compassionate release up to 14 days for quarantine purposes.

This 6 May 2020.

_____
W. Earl Britt
Senior U.S. District Judge